IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAM WELLS, | § | |
| TDCJ-CID No. 1398183, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:11CV723 |
| | § | *Consolidated with* |
| | § | 4:11cv724 and 4:11cv725 |
| | § | (U.S. District Judge Ron Clark) |
| RICK THALER, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT THALER'S ANSWER
## WITH BRIEF IN SUPPORT

Petitioner Michael William Wells was properly convicted of indecency with a child and two counts of aggravated sexual assault of a child.  Wells now seeks habeas corpus relief in this Court pursuant to 28 U.S.C. §§ 2241, 2254 (2010).  However, Wells's  federal habeas corpus petition must be denied because it is without merit.

## JURISDICTION

The court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254 (West 2008).  Jurisdiction is proper in either the district where Wells is in custody or the district in which the state court convicted and sentenced him.  *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000) (quoting § 2241(d)).  In this case, jurisdiction is based on Wells's convictions in Grayson County, which is within the Eastern District of Texas.

## WELLS'S  ALLEGATIONS

1.    He was denied effective assistance of counsel when trial counsel failed to–

    a. investigate an extraneous offense and object to the inadequate notice provided by the state;

    b. move to quash the indictment because it was brought in bad faith, vindictively, and with ill-will;

    c. investigate the prior convictions raised as enhancements by the state;

    d. sever cause number 51406 involving R.C. from cause numbers 51407 and 51408 involving C.W;

    e. move for a curative instruction and mistrial when C.W. testified to extraneous offenses, in which petitioner allegedly committed sexual abuse on her;

    f. object to Officer Jack Melson's testimony on the grounds that he was not a qualified outcry witness;

    g. call Laverne Archey to testify as a hostile witness for the defense in order to demonstrate her personal animosity toward the petitioner;

    h. seek funds to obtain a defense expert witness to testify on Wells's behalf.

    i. allow petitioner to testify on his own behalf during the guilt/innocence phase of trial;

    j. obtain and review any and all videotaped statements made by the complainant C.W.

    k. object to the admission of an overly prejudicial photograph of C.W.;

    l. call Detective Sikes to testify;

      m.    object to the prosecutor bolstering the credibility of the complainants during final argument;

      n. object to an additional extraneous offense involving C.W.;

      o.  call C.W.'s brothers to testify for the defense;

      p. object to the information concerning unadjudicated offenses in the presentence report;

      q. obtain  copies of the police report, the SANE exam report and supplemental report performed on C.W. ;

2.    His due process rights are being violated due to newly discovered evidence supporting a claim of actual innocence.

Docket entry no. 1 at 1-18.[1]

## DENIAL

The Director denies all of Wells's assertions of fact, except those supported by the record or specifically admitted herein.  In addition, the Director opposes any future, substantive motions filed by Wells—including, without limitation, a motion to amend and/or supplement his petition, and a motion for an evidentiary hearing—and will respond to any such motions only upon order of the Court.

## I.  Procedural History

The Director has lawful custody of Wells pursuant to three judgment s and sentences of the 59th District Court of Grayson County, Texas, in cause numbers 051406, 051408, and 051407, styled *The State of Texas v. Michael William Wells.*

---

[1] Wells filed three separate federal writs, raising identical claims in each. The cases were consolidated. Docket entry no. 1 refers to the federal writ petition Wells filed in cause number 4:11cv723, which is the same in all three cases.

CR06 at 57, CR08 at 50, CR07 at 73.[2] In cause numbers 051406 and 051408, Wells was charged in two separate indictments with committing the offense of aggravated sexual assault of.  CR06 at 3;CR08 at 3.  In cause number 051407 Wells was charged by indictment with indecency with a child. CR07 at 3.  Wells pled not guilty to all three charges and he pled true to two prior convictions for burglary.  2 RR 137-137; CR06 at 57, CR08 at 50, CR07 at 73;  5 RR 6.  A jury found him guilty of each offense, the enhancements to be true for a prior conviction to be true and on September 18, 2006 the court sentenced Wells to three forty-five year sentences, with sentences to run concurrently.  CR06 at 57; CR07 at 73; CR08 at 50; 5 RR 18.

Wells appealed all three convictions, but on April 23, 2009 the Eighth Court of Appeals affirmed Wells's conviction in an unpublished opinion.  *Wells v. State*, Nos. 08-07-00062, 08-07-00063, 08-07-00064 (Tex. App. – El Paso, April. 23, 2009).  Wells filed a petition for discretionary review challenging each of his convictions, but it was refused on September 30, 2009. On November 15, 2010, he filed three separate state writ applications, challenging each of his convictions. SHCR-01 at 5;-02 at 5; -03 at 5. The Court of Criminal Appeals denied without written order based on the trial court's findings on October 12,

---

[2]    CR refers to the clerk's record on appeal; distinctions between cause numbers will be delineated by the last two digits of the cause number, i.e. "CR06," "CR07," and "CR08" followed by the page number. "RR" refers to the statement of facts or reporter's record on appeal, preceded by the volume number and followed by the page number. "SHCR" refers to the Clerk's Record of pleadings and documents filed with the court during petitioner's state habeas proceedings. *See generally*, *Ex parte Wells,* App. Nos. 76,135-01;-02; and -03.

2011; "Action Taken" sheets. On October 19, 2011, Wells indicates he placed the instant federal writ in the prison mail.  Docket entry no. 1 at 18.[3]

## II.   Statement of Facts

The court of appeals summarized the evidence presented as follows:

In Cause No. 51306, Appellant (hereinafter "Wells") was charged with intentionally or knowingly causing the penetration of the female sexual organ of R.C., a child under the age of fourteen, with his finger.  In Cause No. 51407, Wells was charged with touching the genitals of C.W., a child under the age of 17, wit the intent to sexually arouse and gratify himself.  In Cause No. 51408, Wells was charged with intentionally and knowingly penetrating the female sexual organ of C.W., a child under the age of fourteen with his finger.

Officer Jack Melson testified that R.C. was brought in by her grandmother with reported allegations of sexual abuse in August of 1997.  R.C. told Officer Melson that her stepfather, Mr. Wells, had sexually assaulted her.  After getting out of the bathtub, R.C. complained to her stepfather that it was hurting when she went to the restroom.  He told her to go get on the bed and get on her hands and knees.  He then put his finger in her.  Officer Melson stated R.C. had told her of another incident after they had left Sherman, TX.  Defense counsel objected on the basis of hearsay, but was overruled by the trial court.  R.C. stated that Mr. Wells told her he was going to take her to a cemetery and have sex with her.  However, she started crying and told him to take her home, which he did.  The county attorney did not pursue the case because the victim no longer wished to proceed.

R.C. testified at trial as well.  R.C. testified to the same events as Officer Melson. She stated that she used to get urinary tract infections, and one night after she got out of the bathtub, she told her stepfather about it, and he had her get on her hands and knees on top of the bed.  He put his finger inside her, but she told him to stop.  R.C. also testified that when she was fifteen he told her he

---

[3]   *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (for purposes of determining the applicability of AEDPA, a pro se petitioner's  federal petition is filed on the date it is placed in the prison mail system).

was going to take her to the cemetery, turn her over the hood, and "pop her cherry."

R.C. also testified that her sister C.W. had come to stay with her at her home, and had told her some things that Wells had done to her. C.W. had told her that he would make her watch adult videos, tried to penetrate her, and would "touch her down there." R.C. told her mother about it, who said she would handle it, but R.C. eventually called the district attorney and Sherman Police Department. On cross-examination, defense counsel solicited testimony that R.C. and her grandmother were upset with Mr. Wells, and made up the allegations of sexual assault.

C.W. testified that when she was eleven, she was watching television with Wells when he put his hands on top of her "private area" and rubbed her. She testified to another incident where he pulled over while they were driving home, and walked out into the woods and had her perform oral sex on him. C.W. also testified that Wells had tried to have sex with her, but she told him no and started to cry so he stopped. C.W. stated that on more than one occasion, Wells put his finger inside her. On cross-examination, defense counsel questioned her about being angry with her mother and Wells for lying to her about Wells being her biological father.

L.S. testified that she knew Mr. Wells because he was married to her aunt. When she was fourteen or fifteen, she went into the bedroom and laid down beside him, and Mr. Wells attempted to put his hand down her pants. She pushed him off and told him no. On cross-examination, defense counsel questioned L.S. about meeting with her cousins, R.C. and L.W., before any police report was filed and discussing the incidents.

Defense counsel called one witness, Joanna Wells, mother of Wells. Ms. Wells stated she had spoken with C.W. about the allegations she had made. She had asked C.W. why she had not told the truth, and C.W. responded if she had then they would know she had lied. Ms. Wells stated that C.W. has a problem telling the truth and is a very good liar.

*Wells v. State*, slip op. at 2-3.

## STATE COURT RECORDS

The state court records relevant to Wells's claims, including the appellate court records and trial transcripts were mailed to the court on February 7, 2012. A copy of the record will not be forwarded to Wells.[4]

## EXHAUSTION OF STATE COURT REMEDIES

The Director believes Wells has sufficiently exhausted his state court remedies as required by 28 U.S.C. §2254(b) and (c), due to the presentation of his claims in his state writ applications for writ of habeas corpus.  Therefore, the Director does not move for dismissal for failure to exhaust his state court remedies. Further, the Director reserves the right to raise exhaustion/procedural default should Wells contend that he raised more than the issues listed above, or should he further amend and/or supplement his petition with additional issues, other than those stated herein.

## ANSWER

Under 28 U.S.C. § 2254(d), a federal court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the relevant constitutional claim by the state court, (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770,

---

[4]    An indigent inmate is not entitled to receive a free copy of his trial records for habeas corpus purposes. *See United States v. MacCollom,* 426 U.S. 317 (1976); *Smith v. Beto,* 472 F.2d  164, 165 (5th Cir. 1973).

785 (2011) (quoting *(Terry) Williams v. Taylor,* 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d).  The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405–06.

A "run-of-the-mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406.  To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09.  And as the Supreme Court recently described this deferential standard, in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . *could have supported*, the state court's decision; and then it must ask *whether it is possible fairminded jurists could disagree that those arguments* or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786 (emphasis added).  Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Richter,* 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti,* 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-

court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado,* 541 U.S. at 664. This is particularly true when reviewing a state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court denial. *Richter*, 131 S. Ct. at 786.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter,* 131 S. Ct. at 786.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against *extreme malfunctions* in the state criminal justice systems," *not a substitute for ordinary error correction through appeal*.

*Id.* (emphasis added) (internal citations omitted).

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). Indeed, state courts are presumed to know and follow the law." *Visciotti*,

537 U.S. at 24.  And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 131 S. Ct. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381.  Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there *was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Richter*, 131 S. Ct. at 786–87 (emphasis added).  And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand . . ." because such a process suggests the proposed rule is not clearly established. *Alvarado,* 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d

941, 948 n.11 (5th Cir. 2001).  And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court.  Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner.  28 U.S.C. § 2254(d)(2).

Finally, where a habeas petitioner has failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty.  28 U.S.C. § 2254(e)(2).  A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence.  *(Michael) Williams v. Taylor,* 529 U.S. 420, 436 (2000).  For example, a petitioner's failure to present controverted, previously unresolved factual issues to the state court is sufficient to constitute "failure" under the plain meaning of § 2254(e)(2).  *Id.* at 433.  But even if the petitioner can meet the foregoing standard, it is within this Court's discretion to deny a hearing if sufficient facts exist to make an informed decision on the merits.  *Clark v. Johnson,* 227 F.3d 273, 284-85 (5th Cir. 2000).

## I.   Wells has Failed to Establish that he was Denied Effective Assistance of Counsel.

The burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence. *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). The familiar standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland,* a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

In determining the merits of an alleged Sixth Amendment violation, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland*, 466 U.S. at 687-89. A reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the constitution." *Strickland*, 466 U.S. at 692. In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine the confidence in the outcome."  *Id.* at 694; *Loyd v. Whitley*, 977 F.2d 149, 159 (5th Cir. 1992).  This showing of prejudice must be "rather appreciable"; thus, a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland.*  *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).  Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *Strickland*, 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

## A.  Failure to investigate and object to extraneous offense testimony (Claim 1(a)).

Wells alleges that his attorney was ineffective for failing to investigate an extraneous offense for which the state gave notice. Docket entry no. 1 at 7.   He maintains, had his attorney investigated, he would have discovered that the offense did not occur in Grayson County.  *Id.*  Wells also faults his attorney for failing to object at trial to the inadequacy of the notice provided by the state, in that the state's notice alleged the incorrect county. The particular extraneous offense evidence that Wells complains of was admitted in the form of testimony from Laverne Secrest, who stated that when she was fourteen or fifteen, Wells attempted to put his hand down her pants.

To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial.  *Id.*; *See also Gray v. Lucas*, 677 F.2d at 1093; *United States. v. Lewis*, 786 F.2d 1278, 1283 (5th  Cir.1986);  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985);

*United States v. Green*, 882 F. 2d 999, 1001 (5th Cir. 1989).  And in order to succeed on his claim of failure to object, Wells needs to demonstrate that the trial court would have sustained the objection, and more importantly, how the objection would have actually changed the result of his trial. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982); *Strickland,* 466 U.S. at 687-88.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Green v. Johnson,* 160 F.3d 1029, 1037 (5th Cir. 1998) (citing *Sones v. Hargett,* 61 F.3d 410, 415 n.5 (5th Cir. 1995)( "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . .").

Wells raised this claim in the court below and Mr. Nix, Wells's  attorney, responded via affidavit.  He states that he did investigate the extraneous offenses and he did not find a reason to object to the state's notice.

> I investigated the prior extraneous offenses in this case.
> I did not object to the adequacy of the notice regarding that extraneous offenses based on "surprise" because I was not surprised. The state had provided two notices of extraneous offenses as well as complete discovery in this case which adequately apprised me of the subject matter and details of the extraneous offenses.

SHCR-01 at 58;-02 at 58;-03 at 72.

The state habeas court made the following findings in response to Wells's claim of failure to object and investigate extraneous offenses:

> 15. Trial counsel, G. Talmadge Nix III investigated the prior extraneous offenses in this case.

> 16.  Trial counsel did not object to the adequacy of the notice regarding that extraneous offenses based on "surprise" because trial counsel was not surprised.

17.  The state provided two notices of extraneous offenses as well as complete discovery in this case which adequately apprised trial counsel of the subject matter and details of the extraneous offenses.

SHCR-01 at 71;-02 at 71;-03 at 85.  The record supports the trial courts findings. It shows that Wells filed a request for notice of state's intention to use evidence of extraneous offenses at trial. CR06 at 38.  The State filed two notices of intent to introduce extraneous offenses, as well as an amended notice.  In its amended notice the state informed Wells of its intent to use the following offense or bad act, or conviction at guilt/innocence, punishment, or for purposes of impeachment.

That on or about January 1, 1994 in Grayson County, Texas the Defendant did then and there sexually assault Laverne Secrest, a child under the age of 17 and not the spouse of the Defendant.

CR06 at 25.

During the guilt/innocence phase of trial a hearing was held outside of the presence of the jury to determine if Laverne Secrest should be permitted to testify to the incident that occurred between her and Wells.  3 RR 72.  The state argued that Secrest should be allowed to testify to rebut the defense's theory of the offense.[5] 3 RR 73. During the hearing, the prosecutor pointed out that notice was provided by an offense report and discovery. 3 RR 79.

---

[5]This evidence is admissible under Texas Rule of Evidence 404(b) which permits evidence of other crimes, wrongs, or acts to be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that reasonable notice is given upon request.  The Texas Court of Criminal Appeals has found that such evidence is admissible to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622 (Tex. Crim. App. 2003); *see also Wells*, slip op. at 8.

Mr. Nix thoroughly cross-examined Secrest on relevant issues during the hearing as well as when she testified before the jury.  He was able to elicit that the date and place on the notice provided by the state was incorrect.  Ms. Secrest admitted, "I'm kind of off on the dates.  I'm not sure if it was '94. I know they were living in College Station.  Eventually, she admitted, the date's wrong.  3 RR 77.  Later, the defense was able to obtain acknowledgment from Secrest that she had never filed any charges against Wells.  3 RR 84.  She never filed a police report.  3 RR 84.  In his argument against the admission of Secrest's testimony, he pointed out that the offense was uncorroborated, the notice the state provided was incorrect in its date, the act that allegedly occurred was lawful, no offense was ever charged.  3 RR 78-79.  He then brought out these issues on cross examination.  3 RR 76-78.

In addition, Wells raised a similar claim on appeal, alleging that the trial court abused its discretion in admitting Secrest's testimony regarding the extraneous offense.  *See* Appellant's Brief at 9-12.  The  Eighth Court of Appeals thoroughly addressed this claim, finding that the testimony was admissible to rebut a defensive theory and that it did not have a prejudicial effect on the jury. *Wells*, slip op. at 4-8. These  state appellate court findings are entitled to the same respect that trial judges' findings receive. *Sumner v. Mata*, 455 U.S. 591, 597 (1982). Further, even if, for the sake of argument the state court's reasoning were flawed, the Fifth Circuit has held that it is the state court's "ultimate decision" that is to be tested for unreasonableness, "not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *see Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (holding that a federal

court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (applying AEDPA deferential standard of review where state habeas writ was denied without explanation). Indeed, state courts are presumed to know and follow the law." *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002). The appellate court found that the evidence was admissible. Wells has failed to rebut the presumption of correctness to which these findings are entitled.    In sum, Wells fails to demonstrate that his attorney did not investigate or that an objection to the notice provided by the state based on an alleged incorrect county was warranted. Wells has failed to show any deficiency on the part of his attorney with regard to this claim. He has failed to establish that the state habeas court's findings and the Court of Criminal Appeals's denial based on those findings, was objectively unreasonable as AEDPA requires.

## B.   Failure to move to quash the indictment (Claim 1(b)).

Next Wells alleges that his attorney was ineffective for failing to move to quash the indictment in cause number 51406 because it was brought in bad faith, with ill will and vindictively. Docket entry no. 1 at 7. He argues that his defense was destroyed by the passage of time in violation of due process. *Id.* He maintains that he informed his attorney that the victim, R.C. as well as his mother-in-law, harbored personal animosity towards him and had contacted law enforcement with the same charges in 1997, but no prosecution resulted. *Id.* According to Wells, the state resurrected the charge against Raven Crisp to

17

substantiate the charge alleged by Cassandra Wells.

Mr. Nix explained in his affidavit in response to the claim, which Wells raised in state court, why he did not move to quash the indictment based on malicious prosecution.

> I did not move to quash the indictment in 51406 on the basis of malicious prosecution or because his viable defenses had been destroyed by the passage of time. Based on my investigation of this case and my knowledge of the prosecutors involved, I do not believe there was any maliciousness involved in this case. Rather, the prosecution on R.C.'s case was refiled after the victim became cooperative and willing to proceed with the case. Further, I am unaware of any legal ground in this case to quash an indictment because of the age of the case. The case was charged within the appropriate statute of limitations and I am unaware of any viable defense which was lost to the applicant due to time.

SHCR-01 at 58-9; 02 at 58-9; -03 at 72. Wells has failed to show that the prosecutor acted vindictively. As long as the prosecutor had probable cause to believe that Wells committed the offense, the decision of what charge to file and whether to prosecute is within her discretion. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). A prosecutor may be selective in law enforcement, so long as that selectivity is not based on race, religion, or other arbitrary classification. *Id.* at 364-65. Here, Wells has not shown that the prosecutor did not have probable cause to indict him of the offense against R.C., nor has he shown selective prosecution.

Furthermore, Wells has failed to demonstrate that the passage of time tainted the indictment. Wells was charged with committing aggravated sexual assault of R.C., a child younger than fourteen, on or about the 21st of August,

1991,  by penetrating her sexual organ with his finger, in violation of Texas Penal Code section 22.021(a)(2)(B).  CR06 at 3, 57.  Under Texas Code of Criminal Procedure, article 12.01 (5), the prosecutor had ten years from R.C.'s eighteenth birthday to indict Wells on the offense of aggravated sexual assault of a child. Wells has not demonstrated that he was indicted outside of the limitations period.  He also has not explained what defense was lost due to the passage of time.  Thus Wells has failed to demonstrate a reason for his attorney to object. Wells's attorney was not required by the Sixth Amendment to file meritless motions.  *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995), nor should he be required to make futile objections.  *Clark*, 19 F.3d at 966

The state habeas court adopted the reasoning provided by Mr. Nix's affidavit, entering the following findings of fact regarding this claim:

18. Trial counsel did not move to quash the indictment in 51406 on the basis of malicious prosecution or because his viable defenses had been destroyed by the passage of time.

19. Based on his investigation of this case and my knowledge of the prosecutors involved, trial counsel did not believe there was any maliciousness involved in this case.

20. The prosecution on R.C.'s case was refiled after the victim became cooperative and willing to proceed with the case.

21. These cases were charged within the appropriated statute of limitations and trial counsel is unaware of any viable defense which was lost to the applicant due to time.

SHCR-01 at 71-72; -02 at 72; -03 at 86.  Considering the applicable Supreme Court law as well as the statute of limitations for aggravated sexual assault of

a child, along with Wells's conclusory allegations, Wells has failed to establish that the Court of Criminal Appeals's rejection of this claim based on the trial court's findings was objectively unreasonable.

### C. Failure to investigate prior convictions used for enhancement (Claim 1(c)).

Next Wells alleges that his attorney failed to investigate the prior convictions used to enhance his convictions.  Docket entry no. 1 at 8. Had he investigated, Wells argues, his defense attorney would have discovered that his prior conviction for burglary out of Oklahoma, was not available because it was only a probated sentence that was never revoked.  *Id.* Wells faults his attorney for failing to file a motion to strike the probated sentence.

In this case, Wells pled true to both enhancements for burglary of a habitation.  5 RR 6.  3 RR 6-7.

> The Court: Mr. Wells, do you acknowledge being one in the same individual to duly and legally and finally be convicted in Bryan County, Oklahoma of the two offenses of burglary as the State has dictated into the record?
>
> Mr. Wells: Yes, sir.
>
> The Court: Thank you.  You may be seated.

3 RR 6-7.

In addition, during sentencing he was asked if he had any objections to the pre-sentence report and he stated that he did not.  5 RR 5. Further, in open court he stipulated to having committed two prior felony offenses of burglary in Oklahoma.  5 RR 6.

It is well established that a plea of "true" to an enhancement paragraph waives any subsequent challenge to the validity of a prior conviction.  *Randle v. Scott*, 43 F.3d 221, 226 (5th Cir. 1995); *Cook v. Lynaugh*, 8221 F.2d 1072, 1075 (5th Cir. 1987).  Further, Wells must vault the formidable barrier that "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As indicated by the record, Wells entered a plea of true to the first two enhancement paragraphs. 3 RR 7.  Thus, in doing so waived any challenges to the validity of those enhancement paragraphs or the facts presented in those paragraphs.

Further, Wells's counsel states that he did investigate the enhancements:

> I investigated the applicant's prior convictions pleaded by the State to enhance the range of punishment.  I obtained a copy of the applicant's full criminal history.   That history indicated two consecutive convictions for burglary out of Oklahoma, and appeared to show that prison time had been assessed in each.  Based upon my discussions with the applicant, I did not have any reason to believe otherwise or any reason to further research those priors.  I have since been informed that one of the prior convictions was a probated sentence.  However, the applicant, when I questioned him, did not tell me that he had only served probation or gave me any information that would have necessitated a further investigation.

SHCR-01 at 59.

The state habeas court adapted Mr. Nix's explanation for his decision not to object in its findings of fact.  SCHR-01 at 72;-02 at 72;-03 at 86 (Finding Nos. 22-26). Wells has failed to undermine the presumption of correctness that should

be attributed to the trial court's findings. He has not demonstrated that he informed his attorney that his sentence in cause number CRF-85-25 was only probated.  He has not provided any evidence that it actually was a probated sentence.  When he pled true to the enhancement, he waived any opportunity his attorney might have had to object to it.  Wells has failed to show that the Court of Criminal Appeals's denial of this claim was unreasonable.

### D.   Failure to move to sever (Claim 1(d)).

Next Wells complains that his attorney failed to file a motion to sever the state's case involving R.C.  in cause number 51406 from its cases involving C.W. Docket entry no. 1 at 8. He argues that he was prejudiced in that he would have been granted a separate trial for the R.C. offense, which occurred in 1991.  He supports his position by citing to Article 37.07, section 3(a) of the Texas Code of Criminal Procedure.  Prior to that statute's amendment in 1993 unadjudicated extraneous offenses were not allowed to be introduced at the punishment stage of a criminal trial. Had his attorney moved to sever, evidence of the unadjudicated offense against R.C. would not have been admitted in the punishment phase of a trial for Wells's offenses against C.W.. Thus, Wells argues, there is a reasonable probability that the sentence imposed would have been significantly less.  He argues also that he was prejudiced by the state being able to demonstrate a pattern of sexual abuse by joinder of the two cases. Docket entry no. 1 at 8.

In order to succeed on this claim, Wells needs to overcome the presumption that trial counsel's decision not to move to sever was a product of reasoned trial strategy.  *Wilkerson*, 950 F.2d at 1065.  He also must show that he was

prejudiced by his trial counsel's performance. *Strickland*, 466 U.S. at 692. Under Article 36.09 of the Texas Code of Criminal Procedure, severance rests within the sound discretion of the trial judge. Tex. Crim. Proc. art. 36.09 (West 2001); *Garza v. State*, 622 S.W.2d 85, 91 (Tex. Crim. App. 1980). Texas Penal Code, section 3.02 (a), permitted the state to try Wells for all three offenses in the same trial.  That statute allows a defendant to be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. Section 3.01 defines "criminal episode," as meaning the commission of two or more offenses, regardless of whether the harm is inflicted upon more than one person or item of property.  Subsection(1) allows for offenses to be tried together that constitute a common scheme or plan.  Subsection (2) allows for offenses to be tried to together that are the repeated commission of the same or similar offenses.

In this case, the offenses against R.C. and C.W. satisfy the penal code's definition of "criminal episode"as defined by either subsection (1) or (2) in that they are a repeated commission of a similar offense and also constitute a common scheme or plan. Thus the state acted in accordance with the statute in trying all three offenses in the same trial.

Moreover, Wells's attorney has explained the strategic reason behind his decision not to move to sever.

> I did not file a motion to sever cause number 51406, from the other two cases with a different victim.  Based on my training and experience, I believe the State would have been able to present extraneous offense evidence in both cases and the information from R.C.'s case and C.W.'s cases would have been presented in both cases–one to prove the primary offense and the other to rebut the appellant's defensive theory that the Grandmother had coached the

victims into making outcry.

SCHR-01 at 59; -02 at 59; 03 at 73.

This reasoning was adapted by the state habeas court in its findings of fact and it is supported by the record.  SHCR-01 at 72; -02 at 72;-03 at 86 (Finding No. 27).The Director has already shown, for example, that the prosecutor successfully argued for admission of Laverne Secrest's testimony to rebut a defensive theory, specifically that the grandmother coached the victims.

> . . . and the State is offering this witness to rebut the defensive theory that has been brought out through the cross-examination, opening statement, and voir dire of Mr. Nix throughout ths trial. More specifically with the witnesses it has been elicited as a motive for each of these witnesses to say this that either the grandmother was trying to break up the marriage or with Raven that they had moved without telling her and she was angry and upset and wanted to get back at Mike, her stepfather, and with Cassandra or Cassie Wells that she was upset because she had found out about her biological father and so she was hurt and angry and, again, wanted to get back at her father.

3 RR 72-73.

Likewise, the court would have allowed R.C.'s testimony,  as evidence in a trial for an offense against C.W. under Texas Rule of Evidence 404(b) which permits evidence of other crimes, wrongs, or acts to be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident to rebut a defensive theory.  *Moses*, 105 S.W.3d 622 (Tex. Crim. App. 2003).  Thus, Wells cannot show that the court would have abused its discretion in failing to grant such a motion. He has not shown prejudice; he has failed to acknowledge that the testimony likely would have been admitted anyway,

24

during the guilt/innocence phase to rebut a defensive theory.  Wells has not overcome the presumption that Mr. Nix's decision not to move to sever was the product of a reasoned trial strategy.  He has not shown that the trial court's findings and the Court of Criminal Appeals's rejection of this claim was unreasonable.

### E.  Failure to object to C.W.'s testimony concerning extraneous offenses (Claims 1(e) and (n)).

In his next claim, Wells alleges that his attorney was ineffective for failing to move for a curative instruction and mistrial when Cassandra Wells testified to extraneous offenses of sexual abuse by Wells against her.  Docket entry no. 1 at 9.  He argues that he was prejudiced in that the jury was given the impression that he repeatedly committed acts of sexual abuse on Cassandra Wells.  *Id.* He raises the same argument in his claim 14, arguing that his attorney failed to object to specific extraneous offense evidence.  *Id.* at 13.

Wells's attorney answered this claim in his affidavit:

> The applicant also alleges that I was ineffective for failing to object, request an instruction to disregard and move for a mistrial when victim C.W. was permitted to testify to extraneous offenses done by the applicant to C.W. and for failing to object under Texas Rule of Evidence 404(b) and 403.  He is not specific as to which extraneous offenses. During the course of the trial, I had decided that our trial strategy would be to present evidence and argue that the alleged victims had been coached into outcry.  I was aware that article 38.37 of the Texas Code of Criminal Procedure expanded the admissibility of extraneous acts evidence in trials involving certain offenses committed against a child under seventeen years of age. Specifically, I knew that section 2 of that statute, notwithstanding Rules 404 and 405, . . . evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant

matters, the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and child and the previous and subsequent relationship between the defendant and child.  With that in mind, I was aware that it might open the door to the discussion of other victims or uncharged conduct, but felt that it was worth the risk in order to present the most viable defense available to the applicant. My decisions regarding possibly objectionable testimony were based on what the testimony was, whether I believed the Court would sustain the objections and the effect such objections might have on the jury. All decisions made during trial were made as a result of our chosen trial strategy.

SHCR-01 at 59-60; -02 at 59-60; -03 at 73-74.  The state habeas court entered findings of fact, adapting the content of Mr. Nix's affidavit.  SHCR-03 at 87-88 (Finding Nos. 28-33).

Trial counsel's reasoning and the lower court's findings are supported by the record.  At trial C.W. testified to the events leading up to Wells sexually assaulting her.  She spoke of Wells putting his hand on her and rubbing her private area when she was eleven while they were watching television.  3 RR 31. And then she told of when he took her out into the woods and made her perform oral sex on him.  3 RR 32.  She also testified regarding Wells forcing her to masturbate him while they watched pornographic movies.  3 RR 33.  This testimony is admissible, as Mr. Nix has pointed out in his affidavit, under Texas Code of Criminal Procedure, article 38.37, section 2 because it is relevant to the underlying offense of aggravated sexual assault, and it demonstrates the state of mind of the defendant and the child and their previous and subsequent relationship.  Considering the admissibility of such evidence under article 38.37, Wells cannot show that an objection in this instance would have been sustained.

Rather than object, Mr. Nix attempted to elicit testimony from C.W. to suggest that she was not being truthful because she felt betrayed by her family and Michael Wells when she found out that Wells was not her biological father.

> Q. . . . So, it's roughly the time all this is supposedly happening with Michael, you were suddenly told by your family and your mother that he's not actually your father; is that correct?
>
> A. Yes.
>
> Q. That they've been lying to you, correct?
>
> A. Yes.
>
> Q. How did that make you feel?
>
> A. Very – I was upset.
>
> Q. You were upset?
>
> A.  And angry. But now that I know, I mean, it's kind of good.
>
> Q. Okay. But at the time you were very upset and angry, correct?
>
> A. Yes.
>
> Q. Did you feel like Michael had betrayed you?
>
> A. In a way, yes.
>
> Q. Okay. Did you feel like your mother had betrayed you?
>
> A. Yes.

3 RR 39-40.  Mr. Nix also attacked C.W.'s credibility, again suggesting that she was being untruthful, by asking her why she had never told authorities about these other incidents of sexual misconduct:

Q.  You know I've – I've got a lot of police reports and statements here that I've gone through in preparation for this.  Did you ever tell the police and the SANE nurse, CPS, about all the events that happened to you?

A.  No.

Q. Did you add some new ones today?

A.  Some that I have never told.

Q.  Okay.  Like the story about the woods?

A. Yes.

Q.  Never mentioned that to anybody before today, did you?

A.  No.  I had mentioned it to my mom.

Q.  Okay.  She never told the police about it?

A.  No.

Q. Okay.  There was never –there was never any sort of statement made about it until today, correct?

A. Till today.

Q.  Why did you wait till today to talk about that?

A.  Because I don't know.

Q. Is it because you need to make your story more believable for the jury?

A.  No.  It's true.

Q.  Okay.  You just never told anyone about it?

A.  I never told anyone about it.

28

3 RR 49-50.  Mr. Nix's decision not to object–his consideration of article 38.37 and whether the court would actually sustain his objection, as well as the effect of the objection on the jury and how best to further their chosen trial strategy is evidenced in the record.  Again, Wells has failed to show that the Court of Criminal Appeals's denial of this claim, when it denied Wells's state writs based on the trial court's findings, was unreasonable, as AEDPA requires.

### F.   Failure to object to officer Jack Melson's testimony (Claim 1(f)).

Wells alleges that his attorney failed to object to Officer Jack Melson's testimony concerning the sexual assault against R.C..  Docket entry no. 1 at 9. He argues Officer Jack Melson was not a qualified "outcry witness" and the state failed to comply with the notice requirements pursuant to Texas Code of Criminal Procedure Article 38.072.   *Id.* Wells has failed to overcome the presumption that Mr. Nix's decision not to object was the product of a reasoned trial strategy.

Texas Code of Criminal Procedure Article 38.072 provides an exception to the hearsay rule that allows the State to introduce outcry statements by a child victim of certain offenses that otherwise would be considered inadmissible hearsay.  Article 38.072 allows the admissibility of statements describing the offense made by a child victim under the age of twelve years to an adult over the age of eighteen.  Invoking the 38.072 exception requires notice and a hearing. *Long v. State*, 800 S.W.2d 545, 546 (Tex. Crim. App. 1990). A statement is not inadmissible hearsay (1) if the party intending to offer the statement timely notifies the adverse party of its intention to do so; and provides the name of the

witness and a summary of the statement; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on time, content, and circumstances of the statement; (3) the child testifies or is available to testify at the proceeding.  Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b) (Vernon 2006).

In this case, defense counsel demonstrates an awareness of the requirements of Article 38.072.  He filed a motion for notice and written summary of hearsay statement and motion for hearing pursuant to Article 38.02 in all three cases (CR06 at 36, CR07 at 32, CR08 at 32).  But it appears that in the sexual assault of R.C.,  the state did not provide notice as to the outcry witness and no hearing was held.   Trial counsel submitted an affidavit, explaining his decision not to object:

> The applicant alleges that I was ineffective for failing to object to the testimony of Jack Melson regarding the outcry by witness R.C. Likewise, I considered objecting to the testimony of Officer Melson, but did not believe the objection would be effective because his testimony was not necessarily presented for the truth of the matter, but rather to show what officer did and why an investigation began and then was dismissed. At the time I made a strategic decision to abstain from objecting to prevent from annoying or antagonizing the jury.  Strategically, I did not believe the evidence presented by Officer Melson was damaging enough to the applicant to risk turning the jury against us.

SHCR-01 at 60; -02 at 60; -03 at 74.

Mr. Nix's reasoning, that Officer Melson's testimony was not admitted for the truth of the matter asserted, is well established in Fifth Circuit and Texas caselaw.  The Fifth Circuit has made clear that out-of-court statements are not

30

hearsay when offered to prove something other than the truth of the matter asserted– for example  reason for an arrest, search, or background information concerning an officer's investigation.  In *U.S. v. Dunnigan*, this Court recently determined that an FBI agent's testimony as to the description of the defendant, told to him by a witness, was not hearsay, because it was not admitted for its truth but to explain the actions of the investigators. 555 F.3d 501, 508 (5th Cir. 2009).  The *Dunigan* court found that testimony describing an investigation's background should not be needlessly objected to on hearsay grounds where it goes only to how police investigated a crime rather than to the truth of the matter.  *Id.* at 507.[6]

---

[6]*See also U.S. v. Carrillo*, 20 F.3d 617, 619 (5th Cir. 1994)(finding that out-of-court statements providing background information to explain actions of investigators are not hearsay); *U.S. v. Valencia*, 957 F.2d 1189,1198 (5th Cir. 1992)(finding government agent's testimony that informant told him that head drug trafficker was on the run was not offered for truth of matters asserted, but to explain why, after waiting months, government decided to arrest the defendants); *U.S. v. Gonzales*, 967 F.2d 1032 (5th Cir. 1992) (finding that officer's testimony that confidential informants had told him that defendant was trafficking in large quantities of heroin and cocaine was not hearsay where offered to establish reason for warrantless entry into defendant's residence); *U.S. v. Garza*, 754 F.2d 1202, 1206 (5th Cir. 1985)(determining that evidence as to what officers were told by way of complaints about those arrested was not hearsay because the statements were offered in explanation of the arrests, not to prove the truth of what was said);  *U.S. v. Darland*, 659 F.2d 70, 72 (5th Cir. 1981) (finding it within trial court's discretion to admit evidence concerning shadowy pair on certain road, over defendant's hearsay objection, where evidence served only to explain in part why sheriff conducted his investigation in the way he did);*U.S. v. Lee*, 541 F.2d 1145, 1146 (5th Cir. 1976) (holding the trial court erroneously excluded as hearsay officer's testimony as to what another officer told him concerning his observations that led to surveillance and search as the information was necessary to determine validity of search).

The Texas Courts also acknowledge that evidence that might otherwise be considered hearsay, when admitted for something other than its truth, does not violate the hearsay rule. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App.1995) (appointment book and the application form was admitted to show how defendant became a suspect in the investigation and did not constitute hearsay); *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) (testimony is not hearsay because it was not introduced for the truth of the matter asserted, but to explain how the officer came to suspect defendant, seek an arrest warrant for him, and then arrest him); *Schneider v. State*, 951 S.W.2d 856, 864 (Tex. App. –Texarkana 1997, *pet. ref'd*) (testimony stating that defendant contacted an informant for the purpose of arranging a meeting to sell cocaine admitted to show the circumstances leading up to meeting or to show why police obtained an arrest warrant did not constitute hearsay).

In this case Officer Melson testified, concerning the investigative process that occurs once they receive a complaint of child sexual abuse. 2 RR 148.  He testified that R.C.'s grandmother brought her in in 1997 when Raven was 15  to report allegations of past sexual abuse.  *Id.* at 148-49.  He also testified concerning the  incident that occurred when R.C. was around six, which prompted the beginning of an investigation. "She stated that her stepfather told her to go get on the bed and get on her hands and knees and then he put his finger inside her." 2 RR 150.  When asked of other incidents that R.C. told him about, Mr. Nix made a hearsay objection, but the court overruled it. 2 RR 151.  Officer Melson testified that he filed the case with the county attorney's office but after R.C. declined to go further with the case, they did not pursue it.  2 RR

32

152. Officer Melson explained the investigation and interviews that are generally followed up by CPS when a case is pursued further.  2 RR 152.

Mr. Nix's determination that had he objected pursuant to article 38.072, the testimony would have been admitted anyway because it was not presented for its truth, is supported by the record. He did lodge a hearsay objection and it was overruled, and Officer Melson was testifying to the steps he took in investigating the case.

Moreover, even if Mr. Nix was deficient in failing to object, and the Director maintains that he was not, Wells still must show prejudice in order to succeed on a claim of ineffective assistance of counsel.  *Strickland*, at 183; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). This he cannot do.  Officer Melson's testimony of the sexual assault as told to him by the victim was cumulative to other testimony presented at trial.  The Supreme Court has said that any ineffective-assistance claim must falter where the evidence to be discovered is so similar and cumulative that failure to find and present it would not prejudice the result.  *Strickland*, 466 U.S. at 694. In *United States v. Cockrell*, 720 F.2d 1423, 1428 (5th Cir. 1983), this Court held that the failure to investigate everyone whose name happens to be mentioned by the defendant does not amount to ineffective assistance, nor does failure to call character witnesses, especially when testimony would have simply been cumulative (citing *Gray v. Lucas*, 677 F.2d 1086, 1093 n.5, 1094 (5th Cir. 1982). This Court has repeatedly refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel. *Harrison v. Quarterman*, 496 F.3d 419, 425 (5th Cir. 2007); *Romero v. Lynaugh*, 884 F.2d 871, 879 (5th Cir. 1989).  A review of

the record establishes that the information with which the court is concerned was in fact put before the jury through the testimony of R.C. herself.

In this case, R.C. testified to the same information as Officer Melson. She told the jury that when she was nine years old, she complained of a urinary tract infection and Wells told her to get on her hands and knees and proceeded to penetrate her with his finger. 2 RR 167-168.  R.C.'s testimony by itself was sufficient to support Wells's conviction for aggravated sexual assault.  Courts give wide latitude to testimony of child victims of sexual abuse. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App. –Houston [1st Dist.] 2004) (holding "[t]he lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."); *Teague v. Scott*, 60 F.3d 1167, 1173 (5th Cir. 1995) (The victim's uncontradicted testimony in graphic detail of the defendant sexually assaulting her was substantial while the disputed evidence too insignificant to have altered the trial's outcome.) *Story v. Collins*, 920 F.2d 1247, (5th Cir. 1991)(Victim's trial testimony regarding penetration of her mouth by defendant's penis was sufficient to sustain conviction for aggravated sexual assault, though it arguably conflicted with her grand jury testimony.).  Wells cannot show that the outcome of the trial would have been different had an objection from Wells's attorney been sustained. Thus he cannot show that the Court of Criminal Appeals's denial of this claim, based on the trial court's findings, was objectively unreasonable.

G.     Failure to call witnesses to testify (Claims 1(g)(h)(o).

Wells presents several allegations of ineffectiveness for failure to call witnesses to testify. He alleges that his attorney was ineffective for failing to call Laverne Archey to testify for the defense as a hostile witness, in order to demonstrate her personal animosity for him.  Docket entry no. 1 at 9.  He also argues that his attorney should have sought funds from the court for an expert witness to testify on the issues of childhood memory and the danger of fabrication of sexual abuse charges.  *Id.* at 10. Wells also blames his attorney for failing to call Detective Sikes as a witness.  Docket entry no. 1 at 13. And he believes that C.W.'s brothers should have been called to testify, since "they would have been aware of something out of the ordinary occurring between the petitioner and C.W.had it occurred."  *Id.* at 14.

With regard to a complaint of an uncalled witness, Wells must allege both what the witness would testify to, and that the witness would actually have appeared at trial and testified. Even   if the complainant satisfies these prerequisites,  "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *See Boyd v. Estelle*, 661 F.2d at 390, (quoting *Buckelew V. United States,* 575 F.2d 515, 521 (5th Cir. 1978)).  "Where the only evidence of a missing witness' testimony is from the defendant, this Court [Fifth Circuit] views claims of ineffective assistance with great caution." *See Lockhart v. McCotter,*782 F.2d 1275, 1282 (5th Cir. 1986), (citing *Schwander v. Blackburn,*750 F.2d 494, 500 (5th Cir. 1985)); *see also United States v. Cockrell,*720 F.2d 1423, 1427 (5th Cir.

1983) (Cockrell failed to produce the affidavit of the uncalled witness). "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *See Alexander,* 775 F.2d at 602, (citing *Boyd v. Estelle,*661 F.2d 388, 390 (5th Cir. 1981)); *Gomez v. McKaskle,* 734 F.2d 1107, 1109-10 (5th Cir.1984). Further, the Fifth Circuit has held that "[H]ypothetical or theoretical testimony will not justify the issuance of a writ. . ." *See Martin v. McCotter,*796 F.2d 813, 819 (5th Cir. 1986), (quoting *Larsen v. Maggio,* 736 F.2d 215, 218 (5th Cir.1984)). Thus, Wells must overcome the presumption that the "challenged action 'might be considered sound trial strategy,'" *Strickland,* 466 at 689.

Wells has failed to demonstrate that any of his prospective witnesses were available to testify and would have testified in his favor. He also has not supplied the requisite affidavits from these alleged potential witnesses. Thus he has not satisfied even the minimal requirement to succeed on this claim. His attorney, however, explained the obvious reason why he did not call Laverne Archey as a witness:

> The applicant alleges that I was ineffective for not calling Laverne Archey to testify. Ms. Archey was the applicant's mother-in-law. She was considerably hostile to the applicant. Strategically, there was nothing to gain and everything to lose by placing such a loose cannon on the stand. Strategically, I believed it was better for our case if we could accuse her of coaching the victims without giving her a forum to rebut our accusations. As such, I did not call her as a witness.

SHCR-01 at 60;-02 at 60;-03 at 74.

36

Mr. Nix also provided his strategic reason not to hire an expert to testify to the issue of fabrication of sexual abuse charges:

> The applicant alleges that I failed to seek funds from the court to hire or to otherwise hire a defense expert regarding childhood memory or false accusations of sexual abuse.  I did not, however, this was also a strategic decision on my part.  I knew experts would be called by the State who could testify regarding childhood memory, false accusations or undue influence upon children.  I did not believe it would be necessary to call our own witness to say what the State's witnesses would say.  In fact, I believed that by having a State's witness admit that these kind of charges can be fabricated or that adults can influence a child's outcry, it would carry more weight.  I did question Detective Shirley Musani about these issues as part of my trial strategy.

SHCR–01 at 60; -02 at 60; 03 at 74.

Indeed, the record establishes that Mr. Nix was able to emphasize the possibility that C.S. could have been fabricating the charges in his cross-examination of Detective Musani:

> Q.  Okay. And wouldn't you agree if a child were to have made a statement to somebody that wasn't true and now the police were involved, they would be under immense pressure to follow that up so they themselves didn't get into trouble?
>
> A.  Not necessarily.
>
> Q.  You don't think so.  You don't think that's possible?
>
> A.  I could be possible.

3 RR 18.  He also was able to suggest that R.C. may have fabricated the charges through cross-examination of Detective Musani:

> Q.  In your experience as a peace officer, are you aware of anyone ever making false allegations?

37

A. Yes, sir.

Q.  Especially with stepchildren or people involved in a tumultuous
family situation?
A. Children usually don't make those up.  It's mainly adults that we
find make false reports.

Q.  How old was Raven at the time, do you know?

A. At the time the incident happened or when she made the report?

Q.  When she contacted you.

A.  I believe she was 19 or 20.

Q.  Would you consider that an adult?

A.  Yes, sir.

3 RR 19-20.

As for Detective Sikes, Wells believes that he would have testified that
there was no evidence of 'trauma' to the victim, based on a report made and
transmitted by Nurse Ridling.  *Id.*.

Wells's attorney explained why he did not call Detective Sikes to testify:

Sikes could not testify to the findings of the SANE nurse as that
would be inadmissible hearsay.  Additionally, that nurse testified
and the evidence of her findings or lack thereof were presented to
the jury.  As such, there was no strategic reason to call Sikes as a
witness

SHCR-01 at 61;-02 at 61;-03 at 74..  The state habeas court agreed.  *Id.* at 76
(Finding Nos. 53-56).

Wells has only speculated that Detective Sikes would have testified to the

same information that was brought out during nurse Ridling's testimony. Nurse Ridling did testify that  there was no trauma to the victim:

> Q.  And when you performed the exam on her, what, if anything, did you observe or find?
>
> A.  She had a normal exam.
>
> Q.  And did that surprise you?
>
> A.  No.
>
> Q.  Why not?
>
> A.  Because even when we have penetration over a period of time – penal penetration to a child, there's not going to be any trauma.  85 percent of the time we don't have any damage.

3 RR 66.  Had Detective Sikes been called to testify in accordance with Wells's expectations, that testimony would have been cumulative.  *Strickland*, 466 U.S. at 694.  *Cockrell*, 720 F.2d at 1428 (finding the failure to call character witnesses, does not amount to ineffective assistance, especially when testimony would have simply been cumulative.);  *Harrison*, 496 F.3d at 425;  *Romero*, 884 F.2d at 879.

      Finally,  Mr. Nix also responded to the claim of failure to call witness with regard to his decision not to call the brothers to testify:

> As for the brothers of C.W., based on my investigation, there was no indication that the brothers had any probative evidence, for or against the applicant. There was no strategic reason to call either of them.

SHCR–01 at 61; 02 at 61; -03 at 75..  This reasoning was also adapted by the

state court in its findings.  *Id.* at 76; 76; 90 (Finding no. 53).

In sum, Wells has failed to satisfy the most minimal burden of proof by showing that the witnesses he believes counsel should have called were available to testify and would have testified in his favor. In contrast, his trial counsel has provided well thought-out strategic reasons for his decision not to call these witnesses.  The state habeas court entered findings of fact in favor of Mr. Nix which are supported by the record.  Wells has not demonstrated that the lower courts's adjudication of these claims was objectively unreasonable.

### H.   Failure to allow Wells to testify (Claim 1(i)).

Wells alleges that his attorney overrode his decision to testify during the guilt/innocence phase of trial.  Docket entry no. 1 at 10.  Further, he argues that the trial judge predetermined that evidence of Wells's prior convictions could be brought up during his testimony.  *Id.*  Because of this, Wells also maintains that his defense counsel should have moved to disqualify the judge due to bias.  *Id.* at 11.

A defendant's right to testify on his own behalf is well established and only the defendant can waive it.  *United States v. Martinez*, 181 F.3d 627 (5th Cir. 1999); *Emery v. Johnson*, 139 V.3d 191, 198 (5th Cir. 1997). Moreover, advice on whether a defendant should testify is considered trial strategy, a judgment call which should not easily be condemned with the benefit of hindsight.  *Robison*, 151 F.3d at 261 (quoting *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985). The Fifth Circuit has found that an affidavit from trial counsel as well as defendant's own statements under oath demonstrating that defendant understood his right to testify indicate that the defendant's decision was not

coerced.  *Emery v. Johnson*, 139 F.3d 191, 198-99 (5th Cir. 1997).

In this case, the court took extra precautions to advise Wells prior to trial that  the decision to testify was his, but that if he chose to take the stand, any prior felony conviction could be brought to the attention of the jury.  The Court made an effort to point out that the possibility of impeachment applied, not just to him, but to all witnesses:

> The Court: Out of an abundance of caution and realizing and not wanting to in any way, shape or form make you think that I am trying to violate any attorney/client privilege as to the impeachment business, as to which the State would reference, or course, you have an absolute right to testify in your own behalf, if you wish to do so.

> As you are abundantly aware, I trust, neither the State can force you to take the stand, nor can I, nor can your lawyer.  It is a personal constitutional right of yours and yours alone. Are you with me so far?

> Defendant Wells: Uh-huh.

> The Court: Now, if you should take the stand, and I don't know what your trial strategy is.  It is none of my business.  If you take the stand and if you have a prior final conviction for a theft or any felony such can be brought to the attention of the jury, not on the issue of your guilt of the indictment.

> There will be an instruction in the Court's Charge to the jury about the fact they can't.  In other words, just because he has been convicted of that he has to be guilty of this.  Not at all. The jury, however, may take that into consideration in assessing or measuring your believability or credibility, as we call it, as a witness in your behalf.

> However, if you should not take the stand, if that should be your trial strategy unless, somehow, what we say, quote/unquote, the door has been opened, something has been brought up by your lawyer, and I don't anticipate this happening, because of his

reputation and experience, but only if the matter has been opened up, if you don't take the stand, those prior convictions can come out.

I don't want you to think that that rule of evidence is limited to you with regard to this quote/unquote impeachment business about prior convictions. The same is true of every witness. If the State has witnesses who have prior theft convictions or prior felony convictions, the jury is entitled to hear that as well.

So I don't want you to think that the law is just picking on defendants and in this case you in particular. Do you understand that?

Defendant Wells: Yes, sir.

The Court: If you take the stand you are fair game. If you don't take the stand, absent something very unusual occurring, it will never come up.

1 RR 7-9.

The court's admonishment is supported by the law. It is well established that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions. *Ohler v. United States*, 529 U.S. 753, 759 (2000). Texas Rule of Evidence 609 provides that felony convictions shall be admissible for impeachment purposes once the trial court decides that the probative value of the conviction outweighs its prejudicial effect. Tex. R. Evidence 609(a). Wells had two prior convictions for the felony offense of burglary. CR06 at 23. If he chose to testify, under Rule 609(a), he risked the possibility of impeachment with those prior convictions. Wells has failed to prove that the trial court was doing anything other than informing him of the risk of testifying so that he could make an informed decision. Wells has failed to establish how this amounted to bias such that his attorney should have moved to disqualify him.

As for Wells's claim that his attorney overrode his decision to testify, Mr.

Nix maintains otherwise:

> The applicant also alleges that I "overrode" his decision to testify at trial.  This is incorrect.  I did advise the applicant that because of his criminal history that I did not believe he should testify and open himself up to cross-examination.  However, as I told the applicant, the ultimate decision regarding whether the applicant would testify belonged solely to the applicant.   The applicant knowingly and intelligently waived his right to testify on his own behalf, as is reflected in the Reporter's Record Volume 3, pages 88-89.

SHCR–01 at 60-61; -02 at 60-61; 03 at 74-75.

Indeed, Wells states on the record that he freely and voluntarily chose not to testify:

> Mr. Nix: Okay.  And we've had – we've had time to talk about whether you should testify or not in this case, correct?
>
> The Defendant: Yes.
>
> Mr. Nix: And I told you you can't be compelled to testify, correct?  In other words, I can't make you.  Nobody can make you.  Correct?
>
> The Defendant: Correct.
>
> Mr. Nix: We've talked about the various strategies associated with that, correct?
>
> The Defendant: Yes.
>
> Mr. Nix: And you heard me during the voir dire address to the jury panel at large about what the law is concerning when a Defendant doesn't testify, correct?
>
> The Defendant: Yes.
>
> Mr. Nix: Okay.  You understand it can't be held against you and the

Court will instruct the jury that the fact you didn't testify cannot be considered as a circumstance against you, do you understand that?

The Defendant?  Yes.

Mr. Nix: Okay.  With that in mind, it's my understanding that – that we as a team, a group, have decided that you should not testify, correct?

The Defendant: Yes.

Mr. Nix: Okay.  And I've – I've explained to you the pitfalls of that occurring, especially with your past record, correct?

The Defendant: Correct.

Mr. Nix: All right. And you have freely and voluntarily chosen not to testify; is that correct?

The Defendant: Yes.

Mr. Nix: Not anything I forced you to do or coerced you to do or went against your will; is that correct?

The Defendant: Yes, that's correct.

Mr. Nix: Okay.  That's all I have, Your Honor.

3 RR 88-89.

Again, Wells  must overcome his declaration in open court that he was informed of the consequences of his decision, yet voluntarily chose not to testify. *Blackledge*, 431 U.S. at 74. His conclusory allegations are  subject to summary dismissal, "as are contentions that in the face of the record are wholly incredible." Id.  The trial court entered findings of fact in favor of Mr. Nix with regard to this claim.  SHCR-01 at 75;-02 at 75;-03 at 75 (Finding Nos. 45-47).

44

Wells has failed to rebut the presumption of their correctness.  He has failed to satisfy either prong of *Strickland*.

### I.   Failure to obtain and review the videotape (Claim1( j)).

Wells claims his attorney failed to obtain and review a videotaped statement that was made of C.W. when she was interviewed by CPS.  Docket entry no. 1 at 10.  He cites to that point in the record where C.W. testified that she remembered going to the CPS office, where they videotaped her, and then to the grand jury. 3 RR 29. But, the record provides no indication that there was any videotape. Therefore, Mr. Nix cannot be held ineffective for failing to review it.

As Wells points out, Mr. Nix filed a motion to determine admissibility of recorded oral statement.  CR07 at 30; CR08 at 30.   In that motion, he requests "a hearing on the admissibility of the testimony of the alleged child victim which is a recording of an oral statement made by the child." *Id.* Mr. Nix acknowledged the state's response to this motion during a pretrial hearing:

> At this time the State says that they don't intend to introduce any oral statements.  However, this Motion has been agreed to that we will have a hearing before the Bench if such statement comes up during trial.

1 RR 4.

Mr. Nix also filed a motion for production of evidence favorable to the accused.

CR07 at 40; CR08 at 40.  At the pretrial hearing he stated,

> At this time the State says that there is no such evidence or any evidence that may exist that has been provided to the Defense and they have agreed to that Motion as well.

1 RR 5.

Mr. Nix also responded to this claim in his affidavit to the state habeas court:

> The applicant alleges that I failed to obtain and review discovery including all videotaped statements by the victims in this case. I did receive discovery in this case. There was no videotaped statements from the victims in these three cases. I inquired about them and was told that none exist.  I have no reason to believe otherwise.

SHCR-01 at 61;-02 at 61;-03 at75.

Wells has failed to counteract trial counsel's affidavit.  He has not shown that there were any videotaped statement such that counsel could be deemed ineffective for failing to review it.  The state habeas court agreed. SHCR-01 at 75;-02 at 75;-03 at 89.  (Finding Nos. 48-50).  This claim is without merit and should be denied.

## J.   Failure to object to the admission of a photograph (Claim 1(k)).

Wells argues that defense counsel was ineffective for failing to object to the admission of a photograph of C.W. when she was two or three, when at the time the offense occurred she was twelve.  Docket entry no. 1 at 12.  He argues that the photograph was admitted to mislead the jury by suggesting that C.W. was a toddler at the time of the charged offense.  *Id.* at 13.

According to Rule 403 of the Texas Rules of Evidence,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . .

(West 2000).

Texas courts have determined that if a photograph is competent, material and relevant to the issues on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. *Martin v. State*, 47 S.W.2d 265, 267 (Tex. Crim. App. 1972). In *Chamberlain v. State*, the Court of Criminal Appeals rejected the premise that certain photographs of the victim's dead body were inflammatory.[7] 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). The admission in evidence of photographs rests in the discretion of the trial court, which determines whether the photographs serve to enlighten the jury. The court's ruling will not be disturbed on review in the absence of a showing of an abuse of discretion. *Terry v. State*, 491 S.W. 2d 161, 163 (Tex.Crim. App. 1973).

The record shows that State's Exhibit 1, identified by C.W. as a picture of her with her sister R.C., when she was two or three and when R.C. was eleven or twelve, was admitted without objection.  3 RR 23.

The record is clear as to the age of C.W. at the time of the offense, thus Wells cannot establish that a photo of her at a younger age could have swayed the jury.   C.W. testified that she was eleven when he first touched her inappropriately and penetrated her with his finger.  3 RR 31, 42.  It was also pointed out during questioning of the SANE nurse that C.W. was eleven.  3RR 67.  Detective Musani testified that C.W. was twelve when she went to interview

--------------------------------------------------

[7]The *Chamberlain* photographs were in color and depicted a closeup of the victim's face with brain matter extruded through the large wound on the side of the head, a closeup of torn skin around the bullet would to the head; a closeup of the exit wound in the back of the head, etc. *Chamberlain v. State*, 998 S.W.2d 230, 236.

her at Piner Middle School.  3 RR 11.

But the photograph, which shows R.C. when she was ten or eleven does demonstrate what she looked like near the time Wells assaulted her.  Officer Melson testified that R.C. told him she was eight or nine when Wells first sexually assaulted her.  2 RR 150.   R.C. testified that she was nine when Wells assaulted her.  2 RR 166-67, 178.  It is the only picture of R.C. admitted at trial.

Wells has failed to show that an objection in this case would have been granted. The repeated testimony providing the exact ages of the girls when Wells assaulted them undermines any misleading effect the photographs of the girls at younger ages could have had.  Furthermore, the photograph showing R.C. at or near the age when the assault occurred is relevant.  Thus, Wells cannot show that admission of the photograph unfairly prejudiced the outcome of his trial. Again, Wells has failed to establish that the Court of Criminal Appeals adjudication of this claim was unreasonable.

### K.   Failure to object to the prosecutor bolstering the credibility of witnesses during closing argument (Claim 1(m)).

Wells alleges that his attorney should have objected to the prosecutor bolstering the complainant's credibility during closing argument. Docket entry no. 1 at 13.  In particular Wells believes the prosecutor should have objected when the prosecutor said in reference to C.W.,

> You listened to her today. Those are no lies. Those are no excuses. That's not making up anything.

*Id.*; 3 RR 143.

He also alleges that the following statement amounts to bolstering:

Daddies don't force their  little girls to perform oral sex on them.
That's not what they do.  Little girls don't make up those sorts of
things.

*Id.*; 3 RR 144.

While a prosecutor may not personally vouch for the credibility of a witness, he may do so in rebuttal to defense argument attacking the credibility of the government's witnesses. *United States v. Washington,* 44 F.3d 1271, 1278 (5th Cir. 1995). It also is permissible for a prosecutor to recite to the jury the inferences and conclusions he wishes it to draw, including which witnesses are credible. *Id.* Thus, the Fifth Circuit found no improper bolstering of a witness when the prosecutor merely recited certain evidence in the record  "and then attempt[ed] to persuade the jury to arrive at a certain conclusion based on that evidence." *Id.* at 1279.

In this case the defense attorney attacked the credibility of the two complainants in his closing.  Indeed, his entire closing relied on the argument that their statements were inconsistent and incredulous.  The following is a portion of it:

Unfortunately these events just don't link up with each other very well. The claimed pattern of abuse, the starting and stopping, and not – nothing happening for six years and starting up again, it just doesn't follow.  The only time allegations are made is when there is trouble going on in the family, when there's a crisis.  And maybe that's how they deal with it.  Maybe that's how focus gets attention back on them. Sometimes people make false wrongful allegations

out of spite, and sometimes they do it because they don't realize
exactly what it's going to cause and the damage they are going to
cause and people do get wrongly accused.  There's just simply too
many gaps, too many holes, and too many inconsistencies for anyone
to believe reasonable doubt doesn't exist.

3 RR 130-31.

The prosecutor's argument that C.W. is credible is a rebuttal to the

defense's argument. *Washington,* 44 F.3d at 1278. Further, it is an inference

that can be drawn from C.W.'s testimony (Id.), as the prosecutor emphasizes the

rational that points to her believability:

> But what does Cassie get?  What does Cassie get out of all this?
> Cassie who tells you and as recently as a few months ago tells him
> you're still my daddy and I still love you. Cassie who didn't want
> anyone to know, who had a – I don't know – prebuescent hormonal,
> you know, preteenage breakdown, who finally tells Raven what has
> happened but promises–makes her promise not to tell anybody. She
> doesn't want anybody to know. She doesn't want to lose her daddy.
> And for that – let's see–she gets to be interrogated, taken out of
> school, questioned.

3 RR 137.  Mr. Nix interpreted the prosecutor's argument as simply argument.

He explained that he did not object because he did not believe there was a reason

to.

> The applicant also alleges that I should have objected to
> bolstering testimony from the State. The prosecutor did not testify,
> nor did she present any "bolstering" evidence.  The argument
> complained of by the applicant in this 11.07 application was just
> that – argument.  The prosecutor's argument was proper and there
> was no strategic reason to raise objections during closing
> arguments.

SHCR-01 at 61;-02 at 61;-03 at 75.  The state habeas court found that the

prosecutor's argument was proper and there was no strategic reason to object. *Id.* at -02 at 76;-02 at 76;-03 at 90 (Finding Nos. 58-59). This claim lacks merit and should be denied.

### L.    Failure to object to the information concerning unadjudicated offenses in the presentence report (Claim 1(p.)).

Wells alleges that his attorney failed to object to the admission of unadjudicated offense evidence contained in the presentence report during punishment. Docket entry no. 1 at 14. He also maintains that his attorney instructed him to plead true to the enhancement provisions. This claim should be denied because it is conclusory. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang*, 691 F.2d at 799 (5th Cir. 1982) (citations omitted). Under Rule 2(c) of the Rules Governing Section 2254 cases, a petitioner is required to plead facts in support of his claims. (West 2010). The Fifth Circuit has held "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Wells fails to provide any support for his claim that his attorney coerced him to plead true to the enhancements. He fails to specify which unadjudicated offense his attorney should have objected to and why. At any rate, the record shows that he stipulated in open court to the prior convictions used for enhancement. 5 RR 6. Further, he fails to overcome well established precedent and statutory law, which allows for the admission of unadjudicated offenses during the punishment phase.

In *Williams v. People of State of New York*, 337 U.S. 241 (1949), the Supreme Court noted that certain evidence that would not be admissible in determining guilt, was especially relevant during sentencing. *Id.* at 247. Due to the "individualization of punishment" the rules applicable at trial are not applicable at punishment. *Id.* at 248. The Court explained, because  the length of a sentence is no longer automatic, and like offenses don't necessarily call for identical punishments, a rigid adherence to evidentiary rules could deny a sentencing judge the opportunity to obtain pertinent information. *Id.* at 246, 247.

Texas courts adhere to the philosophy first articulated in *Williams*.  In *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex.Crim. App. 2002) the Texas Court of Criminal Appeals also distinguished between the guilt and punishment phases. The court noted, during the guilt phase, relevancy can be determined by looking to penal  provisions and statutory justifications, where, for example, an extraneous offense may be offered as proof of identity or intent. *Id.* In the punishment phase, the relevant issues are not so clear cut or factbound. *Id.* In finding  the  punishment  assessed  for  non-final  convictions  relevant   to sentencing, the *Sunbury* court rejected a sole reliance on Texas Rule of Evidence 401[8] as not a perfect fit in the punishment context.  *Id.* (*citing Rogers v. State*, 991 S.W.2d at 264) (finding length of sentence assessed for prior convictions relevant during punishment phase). Determining what is relevant "should be a

---

[8]   Under rule 401, relevant evidence   means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Tex. R. Evid. 401.  (West 2003); Fed. R. Evid. 401 (West 2010).

question of what is helpful to the jury in determining the appropriate sentence for particular defendant in a particular case." *Id.* at 234 (*citing Rogers*, 991 S.W. 2d at 265).

Texas Code of Criminal Procedure, article 37.07, section 3(a) governs the admissibility of evidence at  punishment in all non-capital cases.  *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (*citing Rogers v. State*, 991 S.W.2d 263 (Tex.Crim. App. 1999); *Kutzner v. State*, 994 S.W.2d 180, 188; *Sonnier v. State*, 913.S.W.2d 511, 521 n. 5 (Tex. Crim. App. 1995).  Article 37.07 specifically allows for the admission of unadjudicated offense evidence during the punishment phase:

It provides that evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Wells raised the same claim in his state writ application. After considering trial counsel's affidavit and the petitioner's pleadings, the  state habeas court found as follows:

61.  It is unclear from the applicant's briefings which extraneous offense he would have had trial counsel object to at punishment.

62.  Trial counsel found that once the applicant decided to let the judge set his punishment, any strategic value in attempting to hide the applicant's criminal past from the judge would not have aided the applicant's case.

SHCR-01 at 76;-02 at 76;-03 at 90.   Wells has failed to undermine the presumption of correctness to which these findings are entitled.   He has failed to show that the state courts's adjudication of this claim was unreasonable.

### M.    Failure to obtain copies of SANE report and police report (Claim 1(q)).

In his next claim, Wells alleges that his attorney should have obtained copies of Exhibits A, B, and C, the report and supplement report made by Detective Sikes, and the SANE nurse's report, respectively. Docket entry no 1 at 14. This claim lacks merit.  Wells attorney stated in his affidavit that he obtained copies of these exhibits: "I received all of Detective Sikes' report and all of the SANE report by Carolyn Ridling. There was nothing else to obtain." SHCR-01 at 62;-02 at 62;-03 at 76.   The trail court stated the same in its findings. *Id.* at 77;-02 at 77;-03 at  (Finding Nos. 63 -66). Wells has failed to prove otherwise. Further, the evidence that Wells believes was relevant in these exhibits–that C.W. had no physical evidence of trauma and was evasive when the nurse questioned her–was testified to at trial by the SANE nurse.  3 RR 64-66. This claim should be denied.

### II.   Wells's Claim of Actual Innocence is not Cognizable on Federal Habeas Corpus Review; in the Alternative, it is without Merit (Claim 2).

Wells alleges that his right to due process was violated because newly discovered evidence shows that he is actually innocent of the offenses for which

he was convicted. Docket entry no. 1 at 6.  As support for this claim, Wells has submitted the affidavits of Mack Secrest and JoAnn Wells, attached to his petition as Exhibits A and B.  Because this claim is not cognizable in this forum and also because Wells fails to satisfy the standard that would merit its review, this claim must fail.

Claims of actual innocence do not state a basis for federal habeas corpus relief, absent an independent constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Boyd v. Puckett*, 905 F.2d 895, 896-97, (5th Cir. 1990). Rather, such a claim is a gateway through which a habeas petitioner must pass in order to have an otherwise barred constitutional claim considered on the merits. *Dowthitt v. Johnson*, 230 F.3d 733, 741-2 (5th Cir. 2000).  Thus, to the extent that Wells is raising actual innocence as a freestanding claim, his claim is not cognizable.

In the alternative, even if Wells's claim were not barred from federal review, it lacks merit.  In order to succeed on this claim,  Wells would have to show that in light of the newly discovered evidence, it is "more likely than not that no reasonable jury would have found him guilty beyond a reasonable doubt." *House v. Bell*, 126 S.Ct. 2064, 2068 (2006).

> A substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Schlup v. Delo,* 513 U.S. at 324.  Further, claims of innocence based on a trial witness's recantation of his or her testimony are inherently suspect.  The Fifth Circuit long has recognized that "recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Spence v. Johnson,* 80 F.3d 898, 1003 (5th Cir.1996). *Accord United States v. Gresham,* 118 F.3d 258, 267 (5th Cir. 1997; *Baldree v. Johnson,* 99 F.3d 659, 663 (5th Cir. 1996).

In this case, Wells's claim of actual innocence is based on an affidavit from Mack Secrest stating that there was a lot of drug use and that Laverne Archey, Wells's mother-in-law, coerced the complainants into incriminating Wells. Petitioner's Exhibit A.

In addition, Wells has submitted an affidavit from his mother Joann Wells stating also that Laverne Archey coerced the victims into lying and that on October 5, 2003 she spoke to C.W..  Joann Wells writes,

> We talked about why she filed these lies and false charges and how she should recant those lies. She stated that it was too late that the Court would know that she lied and how she was afraid of telling the truth.

Petitioner's Exhibit B.  These affidavits simply do not "make it more likely than not that no reasonable juror would have found [Wells] guilty beyond a reasonable doubt." *House*, 126 S.Ct. at 2068. Wells has failed to present any new reliable evidence.  Indeed, this information–the possibility of coercion, the drug use, the suggestion that the victims were lying, was presented strategically by defense counsel throughout the trial and can clearly be seen in defense counsel's closing argument.   My Nix, for example,  emphasizes Joann Wells's

testimony which is not markedly different from her affidavit:

> . . . when I put a mother on the stand, . . .  I feel like she's got to tell
> you what she knows, and I don't think you can discount her
> testimony more than anybody else's, and her testimony is that
> Cassie's told her she didn't want to get caught in a lie and that she's
> got a problem telling the truth.

3 RR 132; *See also* Joann Wells's testimony stating that C.W. was lying and that C.W. expressed concern that she would be found out.  3 RR 92-3; *and see* Mr. Nix's emphasis on drug use and family crisis in his closing argument.  3 RR 130-31. The state habeas court found that the information contained in Joann Wells's affidavit in particular was testified to at trial.  SHCR-01 at 77; 2 at 77;-03 at 91 (Finding Nos. 69-72).  It then concluded that Mr. Secrest's opinion as stated in his affidavit were opinions, not evidence, and that Wells had failed to produce any newly discovered evidence which would prove his actual innocence.  *Id.* at 79-80; -02 at 79-80; -03 at 93-4 (Conclusion Nos. 6-12). The Court of Criminal Appeals denied this claim when it denied Wells's state writ application based on the trial court's findings.   Wells has failed to show that this denial was unreasonable.

## CONCLUSION

For the foregoing reasons, the Director respectfully requests that Wells's petition for writ of habeas corpus be dismissed with prejudice and that this Court *sua sponte* deny a certificate of appealability.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division

/s/  Susan San Miguel
SUSAN SAN MIGUEL*
Assistant Attorney General
State Bar No. 24037425

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
(512) 936-1280 (Fax)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing pleading was  served by placing same in the United States mail, postage prepaid, on the 26th day of March, addressed to:

Michael William Wells
TDCJ-CID No. 1398183
Eastham Unit
P.O. Box 9000
2665 Prison Road No. 1
Lovelady, Texas 75851

/s/  Susan San Miguel
SUSAN SAN MIGUEL
Assistant Attorney General